1          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
2                     AT CHARLESTON

3   _____x
                               :
4   UNITED STATES OF AMERICA,   :  CRIMINAL ACTION
                               :
5          Plaintiff,          :  NO. 2:23-cr-00176-01
                               :
6          -vs-                :
                               :
7   TIMOTHY BRIAN JACKSON,      :
                               :
8          Defendant.          :
    _____x  **REDACTED TRANSCRIPT**

9

10                      **PLEA HEARING**
        **BEFORE THE HONORABLE JOHN T. COPENHAVER, JR.,**
              **SENIOR UNITED STATES DISTRICT JUDGE**
11                    **JANUARY 25, 2024**

12

13  **APPEARANCES:**
    **FOR THE PLAINTIFF:**        **AUSA JEREMY B. WOLFE**
14                              Assistant United States Attorney
                              U.S. Attorney's Office
15                              P.O. Box 1713
                              Charleston, WV  25326-1713
16

17

18  **FOR THE DEFENDANT:**        **RICO R. MOORE**
                              441 Rockaway Road
19                              Charleston, WV 25302

20

21

22     Proceedings recorded by mechanical stenography, transcript
    produced by computer.

23  _____

24           CATHERINE SCHUTTE-STANT, RDR, CRR,
                Federal Official Court Reporter
25           300 Virginia Street, East, Room 6009
                   Charleston, WV 25301

```
 1              P-R-O-C-E-E-D-I-N-G-S              1:39 p.m.

 2              THE CLERK:  All rise.

 3              THE COURT:  Good afternoon.  Please be seated.

 4              THE CLERK:  The case before the Court is the

 5   United States of America versus Timothy Brian Jackson,

 6   Criminal Action Number 2:23-cr-00176.

 7        Would counsel note their appearances for the record,

 8   please.

 9              MR. WOLFE:  Good afternoon, Your Honor.  Jeremy

10   Wolfe on behalf of the United States.

11              THE COURT:  Thank you.

12              MR. MOORE:  Good afternoon, Your Honor.  Rico

13   Moore on behalf of Mr. Jackson, who is here in person, Your

14   Honor.

15              THE COURT:  Thank you.

16              And, Mr. Wolfe, what is the purpose of the

17   hearing?

18              MR. WOLFE:  Your Honor, the purpose of today's

19   hearing is to allow the defendant to change his previously

20   entered plea of not guilty and to enter a plea of guilty

21   pursuant to the single-count indictment, pursuant to a plea

22   agreement.

23              THE COURT:  Thank you.

24        Mr. Moore, is that your understanding, as well?

25              MR. MOORE:  It is, Your Honor.
```

```
 1              THE COURT:  Thank you.

 2              THE CLERK:  Will the defendant please stand and

 3    raise your right hand to be sworn?

 4           TIMOTHY BRIAN JACKSON, DEFENDANT, SWORN

 5              THE CLERK:  Thank you.

 6                          EXAMINATION

 7    BY THE COURT:

 8    Q.   Mr. Jackson, state your full name, please.

 9    A.   Timothy Brian Jackson.

10    Q.   And how old are you?

11    A.   44.

12    Q.   What's the extent of your education?

13    A.   Bachelor's degree from West Virginia State University.

14    Q.   Is it fair to say that you read and read well?

15    A.   Yes, Your Honor.

16    Q.   Write and write well?

17    A.   Yes, Your Honor.

18    Q.   Were you able to read and understand the indictment in

19    this case?

20    A.   Yes, Your Honor.

21    Q.   And the plea agreement?

22    A.   Yes, Your Honor.

23    Q.   Have you at any time in the last few years been under

24    the treatment of a physician or anyone for a serious

25    physical illness or ailment?
```

1    **A.**    Nothing serious, Your Honor.

2    **Q.**    Have you ever had occasion to consult or to be under

3    the treatment of a psychiatrist, a physician, counselor,

4    psychologist, or anyone for a mental illness or for an

5    emotional disorder?

6    **A.**    No, Your Honor.

7    **Q.**    And do you take any medication?

8    **A.**    No, Your Honor.

9    **Q.**    During the past 48 hours, have you had any sedatives or

10   medication of any kind, any alcohol of any kind?

11   **A.**    No, Your Honor.

12   **Q.**    In the indictment in this case, you're charged with a

13   single count, and that count reads as follows:

14        On or about August 29, 2022, at or near St. Albans,

15   Kanawha County, West Virginia, and within the Southern

16   District of West Virginia, defendant, Timothy Brian Jackson,

17   knowingly and intentionally possessed with intent to

18   distribute 400 grams or more of a mixture and substance

19   containing a detectable amount of -- what is listed there

20   as -- N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]

21   propanamide, also known as fentanyl, a Schedule II

22   controlled substance.

23        Do you understand what's charged there?

24   **A.**    Yes, sir.

25   **Q.**    And that's charged to be a violation of Title 21,

1     United States Code, Section 841(a)(1).

2          Do you understand that, as well?

3     **A.**   Yes, Your Honor.

4     **Q.**   Let me note to you that if you went to trial on that

5     matter, in order for you to stand convicted of the charge

6     against you in that indictment, it would be necessary that

7     the government prove to the satisfaction of this Court and a

8     jury, beyond a reasonable doubt, each of the following three

9     essential elements of that offense, and they are as follows:

10          First, that on or about August 29, 2022, at or near St.

11    Albans, Kanawha County, West Virginia, you possessed with

12    the intent to distribute 400 grams or more of a mixture and

13    substance containing fentanyl, a Schedule II controlled

14    substance.

15          Do you understand the first element?

16    **A.**   Yes, sir.  Yes, Your Honor.

17    **Q.**   At the time of your possession with intent to

18    distribute at that time, August 29, 2022, you knew that the

19    fentanyl you possessed was a controlled substance under

20    federal law?

21          Do you understand that?

22    **A.**   Yes, Your Honor.

23    **Q.**   And lastly, that you did that knowingly -- all of that

24    knowingly and intentionally.

25          Do you understand that, as well?

1    **A.**   Yes, Your Honor.

2    **Q.**   Now then, have you discussed the charges in this case

3    thoroughly with your attorney, Mr. Moore?

4    **A.**   Yes, Your Honor.

5    **Q.**   Has he counseled and advised you as to the nature of

6    the offense with which you're charged in the indictment?

7    **A.**   Yes, Your Honor.

8    **Q.**   And so far as you can tell, has he also counseled and

9    advised you as to all the defenses that you may have to

10   those charges?

11   **A.**   Yes, Your Honor.

12   **Q.**   Do you fully understand then that with which you're

13   charged?

14   **A.**   Yes, Your Honor.

15          THE COURT:  The Court understands that a plea

16   agreement has been entered into, and I'll ask if the

17   original of that agreement is at the lectern?

18          MR. WOLFE:  It is, Your Honor.

19          THE COURT:  May I see it, please?

20   BY THE COURT:

21   **Q.**   Mr. Jackson, I have before me what appears to be a

22   10-page written plea agreement, to which there is a two-page

23   Stipulation of Facts attached.

24          The agreement is in letter form, and it is dated

25   January 2, 2024.  It's addressed to your attorney, Mr.

1    Moore.  And it's from the United States Attorney and signed

2    on his behalf by Mr. Wolfe as Assistant United States

3    Attorney.

4        Is that the plea agreement that you read?

5    **A.**    Yes, Your Honor.

6    **Q.**    And do you believe you understand everything in it?

7    **A.**    Yes, Your Honor.

8    **Q.**    Is there anything about it that you don't understand?

9    **A.**    No, Your Honor.

10   **Q.**    Notwithstanding your telling me that, I'm going to go

11   over this plea agreement with you paragraph-by-paragraph,

12   and as we do that, if there is anything about it that you

13   don't understand, I want you interrupt me just as we are

14   going through a particular paragraph, and we'll take it up

15   right then.

16       Do you promise to do that?

17   **A.**    Yes, Your Honor.

18           THE COURT:  And if the original of this could be

19   returned -- oh, yes, there is one matter of a minor note,

20   before sending it back to the defendant, on page 8, in what

21   is the sixth line of that page, there is set forth what the

22   Court reads to be "offense level 27, regardless of criminal

23   history category."

24       Are the parties in agreement that that's what that

25   says?

1          MR. WOLFE:  Yes, Your Honor.

2          MR. MOORE:  Yes, Your Honor.

3          THE COURT:  And so, with that, let me ask that

4   that be returned to the lectern.

5       And, Mr. Moore, if you would retrieve that and place it

6   before the defendant.

7   BY THE COURT:

8   **Q.**  And, Mr. Jackson, you may be seated as we go through

9   this.

10      The opening paragraph states that it's agreed by you

11  and the government as follows:

12      Number 1.  Mr. Jackson is charged in a single-count

13  indictment with a violation of 21, U.S.C., Section 841(a)(1)

14  (Possession with the intent to distribute fentanyl).

15      And that, of course, is the charge I read to you.

16      Do you understand that?

17  **A.**  Yes, Your Honor.

18  **Q.**  Paragraph 2 states that Mr. Jackson will plead guilty

19  to the single-count indictment, charging a violation of 21,

20  U.S.C., Section 841(a)(1).

21      And I take it you understand that?

22  **A.**  Yes, Your Honor.

23  **Q.**  The next paragraph states the maximum, as well as the

24  mandatory minimum penalty to which you're exposed by virtue

25  of your guilty plea, and it states as follows:  You're

1    subject to imprisonment for a period of a mandatory minimum

2    of 10 years to as long as life.

3         Do you understand that?

4    **A.**   Yes, Your Honor.

5    **Q.**   And to a fine of as much as $10 million, as well as a

6    term of supervised release of at least five years; a

7    mandatory Special Assessment of $100; and an order of

8    restitution as set forth there.

9         Do you understand all that so far?

10   **A.**   Yes, Your Honor.

11   **Q.**   The next paragraph has to do with the $100 Special

12   Assessment, and it's indicated that that would have been

13   paid by this time.

14        Is that correct?

15             THE COURT:  Mr. Moore, has that happened?

16             MR. MOORE:  I'm sorry, Your Honor.  Is that

17   correct what it says?

18             THE COURT:  Has the $100 Special Assessment been

19   paid?

20             MR. MOORE:  No, it has not, Your Honor.

21             THE COURT:  One of the conditions of the plea

22   agreement was that that would be paid by this time.

23             MR. MOORE:  We have the money with us, Your Honor.

24   And we will pay it as soon as we --

25             THE COURT:  So it will be paid before the day is

1    out?

2          MR. MOORE:  Yes, Your Honor.

3          THE COURT:  Well, so it will be understood then it

4    is sufficient, assuming that's agreeable with the United

5    States, that the $100 be paid to the clerk later today?

6          MR. WOLFE:  That will be fine, Your Honor.

7          THE COURT:  Thank you.

8    BY THE COURT:

9    **Q.**   The next paragraph has to do with forfeiture.  And I

10   note that a notice of forfeiture is set forth in the

11   indictment.  And I take it you're aware of that, Mr.

12   Jackson?

13   **A.**   Yes, Your Honor.

14   **Q.**   And this reference in the plea agreement has you

15   agreeing to forfeit to the United States any and all

16   property in your possession or under your control which

17   constitutes proceeds of or facilitated in the distribution

18   of controlled substances, including, but not limited to, the

19   following:  1. $15,000 that was seized by law enforcement

20   officers on or about July 29, 2022, from a United States

21   Postal Service Priority Mail package bearing the tracking

22   number set forth there.

23         Do you understand that?

24   **A.**   Yes, Your Honor.

25   **Q.**   In addition to that, another $20,501.63 in United

1    States currency seized by law enforcement officers on or

2    about August 29, 222, from the Chase Bank account with an

3    account number ending in 2080.

4        Do you understand that?

5    **A.**   Yes, Your Honor.

6    **Q.**   In addition to that, there are two weapons that are

7    also items that were seized during the execution of a search

8    warrant at ███ ███████ Way in South Charleston, West

9    Virginia.  One is a Smith & Wesson, Model M&P 15, a 5.56

10   caliber, bearing the serial number set forth there and

11   related ammunition.  Again, seized on or about August 29,

12   2022.

13       Do you understand that?

14   **A.**   Yes, Your Honor.

15   **Q.**   And the other weapon is a Panzer Arms, Model AR-12,

16   semiautomatic shotgun bearing the serial number set forth

17   there and related ammunition that was also seized by

18   officers on the same occasion.

19       Do you understand that?

20   **A.**   Yes, Your Honor.

21   **Q.**   And what this is saying is that you forfeit any other

22   property, apart from those four specific items, that would

23   have been in your possession or under your control that

24   constitute proceeds of or facilitated the distribution of

25   controlled substances.

1      Do you understand that?

2  **A.**   Yes, Your Honor.

3  **Q.**   Under the terms of that forfeiture provision in the

4  agreement, you agree to assist the United States in

5  identifying all such property, regardless of location, and

6  to aid the government in its effort to assemble all that

7  property that is to be forfeited, and to provide sworn

8  testimony, and execute any documents necessary to effectuate

9  the forfeiture.

10      Do you understand all that?

11  **A.**   Yes, Your Honor.

12  **Q.**   And then lastly, you waive any defenses to this

13  criminal action or to any related administrative or judicial

14  forfeiture action as set forth there.

15      Do you understand that, also?

16  **A.**   Yes, Your Honor.

17  **Q.**   The next paragraph consists of actually four paragraphs

18  under the title of "Payment of Monetary Penalties."  Have

19  you read all that under that title, and do you understand

20  everything set forth in those four paragraphs?

21  **A.**   Yes, Your Honor.

22  **Q.**   The next paragraph on cooperation states that you will

23  be forthright and truthful with the United States Attorney's

24  Office and other law enforcement agencies with regard to all

25  inquiries made pursuant to this agreement, and that you'll

 1     give signed, sworn statements, and grand jury and trial

 2     testimony upon request of the United States.

 3          Do you understand that?

 4     **A.**   Yes, Your Honor.

 5     **Q.**   The next two paragraphs have to do with use immunity

 6     and limitations on immunity.  Have you read those two

 7     paragraphs; have you been over them with Mr. Moore; has he

 8     explained them to you, and do you believe you understand

 9     everything that's set forth there?

10     **A.**   Yes, Your Honor.

11     **Q.**   The next paragraph has to do with the two-page

12     Stipulation of Facts that is set forth as a part of this and

13     at the end of this agreement.  And do you understand that by

14     Stipulation of Facts is meant agreement of facts?

15     **A.**   Yes, Your Honor.

16     **Q.**   That is, you are agreeing to the truth and accuracy of

17     everything set forth in that stipulation?

18     **A.**   Yes, Your Honor.

19          THE COURT:  And with that, I'm going to ask, Mr.

20     Wolfe, that you read the stipulation.

21          MR. WOLFE:  Yes, Your Honor.

22          The Stipulation of Facts, as the Court mentioned

23     earlier, is a two-page document attached to the plea

24     agreement, Plea Agreement Exhibit A.  The defendant has

25     signed and dated on the second page, along with his counsel

1   and myself.

2        And that document reads, beginning on the first page

3   under the heading entitled "Stipulation of Facts," the

4   United States and Timothy Brian Jackson, hereinafter

5   defendant, me, my, or I, stipulate and agree that the facts

6   comprising the offense of conviction, in the single-count

7   indictment in the Southern District of West Virginia,

8   Criminal Number 2:23-cr-00176, and the relevant conduct for

9   that offense, include the following:

10       Number 1.  For several years prior to August 29, 2022,

11  I rented an apartment located at ██ ██████ Street,

12  Apartment 5, St. Albans, West Virginia.  In and after

13  February 2022, I was living with my family at a house in

14  South Charleston, West Virginia, while still renting the

15  apartment in St. Albans.

16       2.  On August 29, 2022, law enforcement officers

17  searched my apartment.  Inside, they found various

18  quantities of pills, which I had pressed and imprinted with

19  "M30" markings to make them look like

20  legitimately-manufactured 30-milligram Oxycodone pills.

21  Some of these pills contained fentanyl, and others contained

22  Protonitazene or Butonitazene.  Officers also seized various

23  quantities of powder containing these substances, a large

24  quantity of cash, two loaded pistols, pill press equipment,

25  various punch and die kits used to imprint pills with "M30"

1   markings, powder mixing equipment, and various binding

2   powders used to create pill tablets.

3       3.  By that date, I was acquiring fentanyl powder from

4   a source outside the United States and

5   commercially-manufactured binding powder from a company in

6   the United States.  I had also acquired "M30" punch and die

7   sets from China.  I used all these powders and equipment to

8   create pills that appeared to be legitimate Oxycodone

9   30-milligrams pills, but which in fact contained fentanyl or

10  similar substances.

11      4.  I used my apartment, primarily the basement of the

12  apartment, as a workshop for making these pills.

13      5.  I intended to distribute the pills that I created

14  in my apartment.  A package that I placed in the United

15  States mail on August 9, 2022, that was destined for

16  Connecticut, was intercepted by law enforcement officers and

17  searched.  Inside the package, officers found several

18  hundred pills that I created in my apartment.

19      6.  I agree that fentanyl is a Schedule II controlled

20  substance under federal law.

21      7.  I also agree that St. Albans, Kanawha County, West

22  Virginia, is within the Southern District of West Virginia.

23      8.  Finally, I agree that I am responsible for between

24  1,000 and 3,000 kilograms of converted drug weight.

25      This Stipulation of Facts does not contain each and

1    every fact known to me and the United States concerning my

2    involvement and the involvement of others in the charges set

3    forth in the indictment.

4        And, again, the defendant, his counsel, and myself have

5    signed the bottom part, page 2 of that document, Your Honor.

6                THE COURT:  Thank you.

7    BY THE COURT:

8    **Q.**   Mr. Jackson, do you understand everything in that

9    Stipulation?

10   **A.**   Yes, Your Honor.

11   **Q.**   Anything about it that you don't understand?

12   **A.**   No, Your Honor.

13   **Q.**   Is everything in it accurate?

14   **A.**   Yes, Your Honor.

15   **Q.**   Let me note to you that if you withdraw from this

16   agreement, or if it is voided because you've breached any of

17   its terms, and then you're subsequently tried on the charge

18   contained in the indictment, the Court notes that the

19   government may introduce during the course of that case

20   against you the stipulation of facts to which you've agreed.

21       Do you understand that?

22   **A.**   Yes, Your Honor.

23   **Q.**   And that evidence would be introduced before the Court,

24   or the Court and a jury, as the case may be, as evidence

25   against you at any point during the course of the case by

1    the government.

2         Do you understand that?

3    **A.**   Yes, Your Honor.

4    **Q.**   And in doing so, the government would be permitted to

5    note that you have agreed to the truth and accuracy of

6    everything that is in that agreement.

7    **A.**   Yes, Your Honor.

8    **Q.**   That is, in that stipulation.  Do you understand that?

9    **A.**   Yes, Your Honor.

10   **Q.**   The next paragraph states that you and the government

11   have reached an agreement on the sentencing guidelines.  I

12   want to note to you, first of all, that the Court is not

13   bound by the agreement that you and the government have.

14   Although the Court, of course, will be reviewing what you

15   agreed to to determine its accuracy.

16        Under the terms of this agreement, you agree that the

17   Base Offense Level for that which is charged in the

18   indictment is 30.

19        And you do not agree with the government that the

20   government appears, presumably, ready to contend that to

21   that Base Offense Level is added a number of enhancements

22   for characteristics of the offense, one of which is

23   possession of a firearm, which elevates the offense level by

24   two; another is maintaining a drug-involved premises , which

25   also elevates by another two levels; and knowingly

1    misrepresenting fentanyl as another substance in this case

2    as Oxycodone, it would appear, for which the elevation would

3    be four levels.

4        And so, you and the government agree that the Base

5    Offense Level is 30.  You don't agree on these additional

6    eight levels that I've just gone over with you, but the

7    government appears ready to maintain them.

8        Do you understand all that?

9    **A.**   Yes, Your Honor.

10   **Q.**   Now then, I want to go over with you now the matter of

11   the sentencing guidelines.  In this case, as the plea

12   agreement has already noted, you're subject to a mandatory

13   minimum term of 10 years' imprisonment.

14       Do you understand that?

15   **A.**   Yes, Your Honor.

16   **Q.**   And the term of imprisonment could be as long as life.

17   One of the things that the Court will be considering in

18   determining the sentence to impose are the United States

19   advisory sentencing guidelines.  Those guidelines will

20   indicate a relatively narrow range in which you may be

21   sentenced.  The Court is not bound by that range, but it's a

22   very important part of the sentencing process, and the Court

23   will be paying a great deal of attention to that range in

24   determining what sentence to impose.

25       Do you understand all that so far?

**A.**   Yes, Your Honor.

**Q.**   In determining what that guideline range is, a number

of factors are taken into account, and they include your

role in the offense to which you've pled guilty, your

criminal history, whether you've accepted responsibility for

your misconduct, and whether you have obstructed justice in

any way.  The Court will also consider what may be relevant

conduct, that is, drug trafficking of this same or other

substances that are controlled substances under the law.

And the point about that is that the quantity of drugs

involved in those other activities, if there are any, could

be added to the quantity of drugs that is set forth in the

indictment.

     Do you understand that?

**A.**   Yes, Your Honor.

**Q.**   And so when all those are added up, if there are other

items to be included, it may drive that Base Offense Level

up even higher than 30 as a starting point.

     Do you understand that?

**A.**   Yes, Your Honor.

**Q.**   And so the Court will go through that process of

determining what that guideline range is.  And once the

Court has the benefit of it, the Court then can evaluate the

guideline range in relation to many other factors in this

case to determine what the sentence should be.

1      Do you understand that?

2  **A.**   Yes, Your Honor.

3  **Q.**   And it may be that it is a sentence lower than the

4  guideline range, it may be a sentence above the guideline

5  range, or someplace within the range, but in no event will

6  it be less than the mandatory minimum of 10 years.

7      Do you understand all that?

8  **A.**   Yes, Your Honor.

9  **Q.**   Now then, the next paragraph notes that if you are

10  sentenced to an Offense Level of 38, and that would total,

11  for example, the 30 plus the enhancements of eight set forth

12  in this same document, if you're sentenced at that level,

13  coupled with your criminal history, or below it, you forever

14  waive your right to appeal your conviction and sentence in

15  this case.

16      Do you understand that?

17  **A.**   Yes, Your Honor.

18  **Q.**   And I note to you that in the process of this, you're

19  waiving one other very important right, as well.  After

20  appellate rights have been exhausted or not used at all, you

21  may have a basis for attacking your sentence in what is

22  called a collateral attack.  It's a kind of habeas

23  proceeding.  Under the terms of this agreement, you're also

24  waiving your right to do that, as well.

25      Do you understand that?

**A.**   Yes, Your Honor.

**Q.**   And there is only one exception to all that I've told you, and that is, you do have the right to appeal or collaterally attack on the ground of ineffective assistance of counsel, but that's the only one left to you if the Court sentences you in accordance with this agreement and its terms to an offense level that is no greater than 38, or if it is lower.

Do you understand that?

**A.**   Yes, Your Honor.

**Q.**   By way of explanation, I would note to you that if your Criminal History Category is I, which is the lowest category, that is, you have no prior convictions --

**A.**   No, Your Honor.

**Q.**   If, for example, it turns out that the Court sentences you at 38 and I, under the guidelines, the Guidelines range for that is 235 to 293 months' imprisonment.

Do you understand that?

**A.**   Yes, Your Honor.

**Q.**   And so I just want to be sure that you are cognizable of all of those factors, and it seems that you're well-versed in them.

Let me note to you that you're also waiving a couple of other rights in this matter, as well, and one is that you are waiving your right to ever contend that the statute of

1    conviction, which is Title 21, United States Code, Section

2    841(a)(1), you're waiving your right to ever contend that

3    that statute is unconstitutional.

4         Do you understand that?

5    **A.**   Yes, Your Honor.

6    **Q.**   And you're also waiving your right to ever contend that

7    the facts that are set forth in the Stipulation of Facts are

8    insufficient to constitute such an offense.

9         Do you understand that, as well?

10   **A.**   Yes, Your Honor.

11   **Q.**   The next paragraph states that you waive your right to

12   request or receive any records pertaining to the prosecution

13   or investigation of your case.

14        Do you understand that?

15   **A.**   Yes, Your Honor.

16   **Q.**   Now, this states that you specifically waive that right

17   under the Freedom of Information Act and the Privacy Act of

18   1974, but you waive it on every other ground, as well.

19        Do you understand that?

20   **A.**   Yes, Your Honor.

21   **Q.**   The next paragraph refers to the final disposition,

22   which means sentencing.  And there, it's noted that the

23   United States reserves the right to inform the Probation

24   Office and the Court of all relevant facts and conduct, to

25   present evidence and argument relevant to the factors that

1     are set forth in Title 18, Section 3553(a), and to respond

2     to questions raised by the Court.

3          Do you understand that, do you?

4     **A.**   Yes, Your Honor.

5     **Q.**   But I want to go back to a part of that, which has to

6     do with presenting evidence and argument relevant to the

7     factors that are set forth in Title 18, United States Code,

8     Section 3553(a).

9          That is the section of the statute that the Court looks

10    to in order to determine the factors to take into account in

11    imposing sentence in your case.  One of those factors we've

12    already been over, the United States Sentencing Guidelines.

13         In addition to that, the Court will be taking into

14    account such things as your own personal characteristics,

15    characteristics of the offense.  The Court will endeavor to

16    impose a sentence that will protect the public from further

17    criminal conduct on your part, as well as to protect not

18    only you but others from engaging in like conduct.  The

19    Court will also be undertaking to impose a sentence that is

20    one that corresponds to the seriousness of the offense; one

21    that will command respect for the law, and quite a number of

22    other factors.  I'm not going into, necessarily, all of them

23    with you today, but I simply wanted you to know that that is

24    the section of the statute that the Court looks to in order

25    to determine all those factors to be taken into account of

1    which many I have already mentioned.

2         Do you understand that?

3    **A.**   Yes, Your Honor.

4    **Q.**   The next paragraph states that if either you or the

5    United States violate the terms of this agreement, the other

6    party may void it.

7         Do you understand that?

8    **A.**   Yes, Your Honor.

9    **Q.**   And lastly, it's noted that this written agreement

10   constitutes the entire agreement between you and the United

11   States in this matter.  Further, that there are no

12   agreements, understandings, or recommendations as to any

13   other pending or future charges against you in any Court,

14   other than this Court, the United States District Court for

15   the Southern District of West Virginia.

16        Do you understand that, as well?

17   **A.**   Yes, Your Honor.

18   **Q.**   And so, do you understand everything in your plea

19   agreement?

20   **A.**   Yes, Your Honor.

21   **Q.**   Is there anything about it that you don't understand?

22   **A.**   No, Your Honor.

23   **Q.**   Did you approve of this agreement when it was reached?

24   **A.**   Yes, Your Honor.

25   **Q.**   And when you signed it?

1    **A.**   Yes, Your Honor.

2    **Q.**   And do you approve of it now?

3    **A.**   Yes, Your Honor.

4    **Q.**   Is that your signature at the foot of the eighth page

5    of the agreement?

6    **A.**   Yes, Your Honor.

7    **Q.**   And the second page of the Stipulation of Facts?

8    **A.**   Yes, Your Honor.

9    **Q.**   And are those your initials at the foot of the other

10   pages?

11   **A.**   Yes, Your Honor.

12   **Q.**   Thank you.

13          THE COURT:  And, Mr. Moore, you may return that

14   plea agreement to the lectern, please.

15   BY THE COURT:

16   **Q.**   And, Mr. Jackson, you may stand again, if you would,

17   please.

18        Are you ready to enter a plea to the single-count

19   indictment in this case?

20   **A.**   Yes, Your Honor.

21   **Q.**   What is your plea?

22   **A.**   Guilty, Your Honor.

23   **Q.**   Before I accept your plea, I want to make certain that

24   you understand a number of things in connection with your

25   plea, the charges against you, and your constitutional

1    rights.

2              THE COURT:  First of all, Mr. Moore, are you

3    appointed or retained counsel in this case?

4              MR. MOORE:  Retained.

5              THE COURT:  Pardon?

6              MR. MOORE:  Retained.

7              THE COURT:  Yes.  Thank you.

8    BY THE COURT:

9    **Q.**   Let me note to you, Mr. Jackson, that you have the

10   right to the assistance of a lawyer at every stage of these

11   proceedings, including trial, should you wish to go to

12   trial.

13        Do you understand that?

14   **A.**   Yes, Your Honor.

15   **Q.**   Do you further understand that if you're without funds

16   with which to engage an attorney to represent you at every

17   stage of these proceedings, including trial, should you wish

18   to go to trial, the Court would, should you qualify for lack

19   of sufficient assets, appoint counsel for you to represent

20   you without any cost whatever to you, but with that cost

21   being entirely to the United States.

22        Do you understand?

23   **A.**   Yes, Your Honor.

24   **Q.**   And in such event, all of the costs of this proceeding

25   would be entirely at the expense of the United States, as

1    well.

2         Do you understand that also?

3    **A.**   Yes, Your Honor.

4    **Q.**   Do you further understand that if you were instead to

5    enter a plea of not guilty, that you have the right to a

6    speedy and public trial by jury; you have the right to be

7    confronted by the government's witnesses and to

8    cross-examine them; you have the right to use the process of

9    this Court to compel witnesses to come in and testify on

10   your behalf; and you're presumed to be innocent of these

11   charges until proven guilty beyond a reasonable doubt.

12        Do you understand that?

13   **A.**   Yes, Your Honor.

14   **Q.**   Do you further understand that -- do you further

15   understand that if you instead pled not guilty and went to

16   trial, at that trial, you may take the witness stand and

17   testify in your own behalf?

18        Do you understand that?

19   **A.**   Yes, Your Honor.

20   **Q.**   Do you further understand that if you were to plead not

21   guilty and go to trial and chose not to testify, that fact

22   would create no inference or presumption of guilt, for, as

23   I've already indicated to you, you're presumed to be

24   innocent of these charges beyond a reasonable doubt?

25        Do you understand that?

1    **A.**    Yes, Your Honor.

2    **Q.**    Do you further understand that should you plead not

3    guilty, at the trial, it would be necessary that the

4    government come forward with witnesses to prove these

5    charges against you beyond a reasonable doubt?

6    **A.**    I understand, Your Honor.

7    **Q.**    Further understand that by entering a plea of guilty,

8    you waive your right to require the government to prove the

9    charges against you beyond a reasonable doubt, and you waive

10   your constitutional rights the Court's telling you about.

11   **A.**    Yes, Your Honor.

12   **Q.**    In particular, you waive your constitutional right with

13   respect to self-incrimination with respect to the offense to

14   which you've pled guilty as set forth in the indictment.

15        Do you understand that?

16   **A.**    Yes, Your Honor.

17   **Q.**    Do you also understand that if the Court accepts your

18   plea of guilty, there will not be a further trial of any

19   kind, so that by pleading guilty, you waive your right to

20   trial, including your right to trial by jury?

21   **A.**    Yes, Your Honor.

22   **Q.**    Do you also understand that the Court intends to

23   question you under oath, on the record, in the presence of

24   your attorney about the offense to which you've pled guilty,

25   and if you fail to answer those questions truthfully, you

1  may later be prosecuted for perjury or false swearing on

2  account of that failure?

3  **A.**   Yes, Your Honor.

4  **Q.**   Further understand that by pleading guilty, the Court

5  may impose the same penalty as if you'd stood trial and been

6  convicted of the offense charged in the indictment?

7  **A.**   Yes, Your Honor.

8  **Q.**   In that connection, the mandatory minimum penalty for

9  that which is charged in the indictment is imprisonment for

10  a mandatory minimum of 10 years.

11      Do you understand that?

12  **A.**   Yes, Your Honor.

13  **Q.**   And that the maximum is life?  Do you understand that?

14  **A.**   Yes, Your Honor.

15  **Q.**   Do you also understand that you're subject to a term of

16  supervised release of at least five years?

17  **A.**   Yes, Your Honor.

18  **Q.**   And a fine of as much as $10 million?

19  **A.**   Yes, Your Honor.

20  **Q.**   As well as a $100 Special Assessment that you're going

21  to pay later today?

22  **A.**   Yes, Your Honor.

23  **Q.**   And restitution, as set forth in the plea agreement?

24  **A.**   Yes, Your Honor.

25  **Q.**   Do you understand what's meant by supervised release?

1    **A.**   Yes, Your Honor.

2    **Q.**   It's a very important part of your sentencing, and I

3    want to go over it, at least briefly, with you now.

4         As I've indicated, in addition to the term of

5    imprisonment that the Court will impose in this case, the

6    Court will also impose a term of supervised release, which

7    will be at least five years in length.

8         That term of supervised release will be subject to

9    various terms and conditions, some of which may limit your

10   freedom to some limited extent.  The important thing about

11   it is this:  If you violate any of those terms and

12   conditions, that means that your supervised release can be

13   revoked; and if it is, you can then be sentenced to a

14   further term of imprisonment in addition to that which you

15   would have already served for this offense, which could be

16   as long as another five years.

17        Do you understand that?

18   **A.**   Yes, Your Honor.

19   **Q.**   And if at that time the Court sentenced you to less

20   than another five years, you'd be placed on supervised

21   release once again; and if you violated those terms of

22   supervised release again, you could, once more, be sentenced

23   to a term of imprisonment of as long as five years.

24        Do you understand that?

25   **A.**   Yes, Your Honor.

1    **Q.**   And I would ask you, in light of that, if you have any

2    questions at all about the penalties to which you are

3    subject as a result of this plea?

4    **A.**   No, Your Honor.

5    **Q.**   Do you understand that the Court is not bound by your

6    plea agreement, but should the Court not accept it, you may

7    withdraw your plea of guilty?

8    **A.**   Yes, Your Honor.

9    **Q.**   Mr. Jackson, you have the right to plead not guilty,

10   and if there is any doubt whatever in your mind as to

11   whether you're guilty of this offense, the Court would urge

12   you to plead not guilty.

13       What is your wish?

14   **A.**   To plead guilty, Your Honor.

15   **Q.**   Other than your written plea agreement filed and read

16   here today, have you been made any promises by anyone of

17   leniency, or light sentence, or probation?

18   **A.**   No, Your Honor.

19   **Q.**   Have you been threatened by anyone in any way, has

20   anyone used any means of intimidation, or coercion, or

21   pressure to induce you to enter a plea of guilty against

22   your will?

23   **A.**   No, Your Honor.

24   **Q.**   And I would ask you, are you satisfied with your

25   attorney, Mr. Moore, in this case?

1    **A.**   Yes, Your Honor.

2    **Q.**   Do you feel that he has represented you fully and

3    fairly?

4    **A.**   Yes, Your Honor.

5    **Q.**   Has he spent a good deal of time with you developing

6    this case?

7    **A.**   Yes, Your Honor.

8    **Q.**   Now, back to your written plea of guilty under the

9    terms of the plea agreement.  Aside from the plea agreement,

10   are there any side agreements with anyone about the sentence

11   to be imposed in this case?

12   **A.**   No, Your Honor.

13   **Q.**   Do you then offer to enter a plea of guilty to the

14   single-count indictment in this case, voluntarily and of

15   your own free will?

16   **A.**   Yes, Your Honor.

17   **Q.**   Do you do that with the full understanding that you'll

18   being waiving your constitutional rights the Court's told

19   you about, including your right to a fair and speedy trial

20   by jury?

21   **A.**   Yes, Your Honor.

22   **Q.**   And do you do it, as well, with the full knowledge of

23   the consequences of your plea, including the mandatory

24   minimum penalty that the Court must impose in this case, and

25   the maximum penalty that the Court may impose in this case?

1    **A.**    Yes, Your Honor.

2    **Q.**    Do you waive further reading of the indictment, or are

3    you satisfied that you fully understand that with which

4    you're charged?

5    **A.**    I fully understand, Your Honor.

6            THE COURT:  The clerk will take the defendant's

7    plea in writing.

8            THE CLERK:  The *United States of America versus*

9    *Timothy Brian Jackson*, Criminal Action Number 2:23-00176.

10        Guilty plea.

11        In the presence of Rico R. Moore, my counsel, who has

12   fully explained the charge contained in the indictment

13   against me, and having received a copy of the indictment

14   from the United States Attorney before being called upon to

15   plead, I hereby plead guilty to the single-count indictment.

16           THE COURT:  Mr. Moore, could you obtain the

17   original of that at the lectern?

18           MR. MOORE:  Yes, Your Honor.

19           THE COURT:  Thank you.

20        And if you would return that to the lectern, and

21   exhibit it to me on the way.

22           MR. MOORE:  Yes, Your Honor.  (Exhibiting

23   document.)

24           THE COURT:  Thank you, sir.

25           The defendant's written plea of guilty, having

1    been signed by him in the presence of the Court with respect

2    to the single-count indictment in this case, is received and

3    filed.

4    BY THE COURT:

5    **Q.**   Mr. Jackson, tell me in your own words what it is that

6    you did.  What was your role in the offense in this matter?

7    **A.**   There was a search warrant issued to my apartment that

8    I had in St. Albans.  There were drugs there that I was

9    aware of that I was supposed to sell, and they found them.

10   **Q.**   This matter seems to refer to the mailing of drugs.

11   Can you tell me about that?

12           (An off-the-record discussion was held between

13   defense attorney Moore and the defendant.)

14           THE DEFENDANT:  Are you referring to the package

15   of the Mexicans -- the Mexicans gave me an address to send?

16   BY THE COURT:

17   **Q.**   Yes.  The package, as you call it?

18   **A.**   The Mexicans gave me an address to send the package to;

19   I packaged the box, and I sent it out.

20   **Q.**   And when was it that you sent it out?

21   **A.**   The same day.

22   **Q.**   Pardon?

23   **A.**   The same day that they asked me to, sir.

24   **Q.**   The same day as what, sir?

25   **A.**   The 29th, Your Honor.

1    **Q.**   Of what month?

2    **A.**   Of August.

3    **Q.**   What year?

4    **A.**   2022.

5    **Q.**   And where were you at the time?

6    **A.**   I was in St. Albans.

7    **Q.**   And you mailed it where?

8    **A.**   To Connecticut.

9    **Q.**   And is it the case that the drugs that you're referring

10   to were within the package?

11   **A.**   Yes, Your Honor.

12   **Q.**   And what was the quantity?

13   **A.**   Couple hundred of them, Your Honor.  I really can't

14   remember.

15   **Q.**   Couple hundred of what?

16   **A.**   Pills, Your Honor.

17   **Q.**   Do you have any idea what the weight was?

18   **A.**   No, Your Honor.

19   **Q.**   Is it fair to say that the weight was over 400 grams?

20   **A.**   It was not over 400 grams, Your Honor.

21   **Q.**   It was not?

22          MR. MOORE:  Total.

23          THE DEFENDANT:  Oh the total?  Oh, yes, sir.

24   BY THE COURT:

25   **Q.**   You say it would be fair to say the weight was over,

 1   even if just over --

 2   **A.**   Yes, sir.

 3   **Q.**   -- 400 grams of fentanyl?

 4   **A.**   Yes, sir.

 5        (An off-the-record discussion was held between defense

 6   attorney Moore and the defendant.)

 7   BY THE COURT:

 8   **Q.**   And at that time, a search warrant was executed, was

 9   it, on your premises on ███████?

10   **A.**   Yes, Your Honor.

11   **Q.**   And I take it the items that are being abandoned or

12   forfeited pursuant to the terms of this agreement that we

13   went over, as set forth in the plea agreement, were found at

14   that time?

15        MR. MOORE:  One second, Your Honor.  I believe

16   there is some confusion.  I need to speak with my client for

17   a second.

18        (An off-the-record discussion was held between defense

19   attorney Moore and the defendant.)

20        MR. MOORE:  I believe we misspoke, Your Honor.

21   You asked him if the items were found on ██████.  And I

22   believe ███████ Drive was his actual residence in South

23   Charleston.

24        THE COURT:  Yes.

25        MR. MOORE:  That is not where the drugs were

1    found, Your Honor.

2            THE COURT:  The drugs were found in the package, I

3    take it?

4            MR. MOORE:  The drugs -- when you asked him if it

5    was over 400 grams.

6            THE COURT:  Yes.

7            MR. MOORE:  He believed that you were referring to

8    the total weight.  The total weight that was found at the

9    apartment was over 400 grams.

10       What was in the package that was sent, I believe, was

11   100 to 200 pills.  So that would not be 400 grams.

12           THE COURT:  Were those fentanyl pills?

13           THE DEFENDANT:  Yes, Your Honor.

14   BY THE COURT:

15   **Q.**  And so, you've heard what Mr. Moore just stated.  Has

16   he stated it correctly?

17   **A.**   Yes, Your Honor.

18           MR. MOORE:  The individual -- the things that you

19   referred to, the four items, the guns, at ████████, that is

20   correct, Your Honor, that is his residence.

21           THE COURT:  Thank you.

22   BY THE COURT:

23   **Q.**  And with that, I would ask whether or not it's fair to

24   say that, as well, that you knew at the time you undertook

25   to send off that package, as well as when you were in

1    possession of any other fentanyl, that the fentanyl was a

2    controlled substance under federal law?

3    **A.**   Yes, Your Honor.

4    **Q.**   And I would ask whether or not the defendant has

5    anything further with respect to the factual basis for the

6    plea?

7    **A.**   No, Your Honor.

8            THE COURT:  Nothing further, Mr. Moore?

9            MR. MOORE:  Nothing, Your Honor.

10           THE COURT:  And does the government?

11           MR. WOLFE:  No, Your Honor.

12           THE COURT:  Could the government summarize it?

13           MR. WOLFE:  Yes, Your Honor.  Essentially, this

14   investigation --

15           THE COURT:  And, Mr. Jackson, listen very

16   carefully to what Mr. Wolfe says, because I'm going to ask

17   you if it's correct here in a moment.

18       Please go ahead.

19           MR. WOLFE:  Thank you, Your Honor.

20       In the months leading up to August 29, 2022, law

21   enforcement officers began to suspect that Mr. Jackson was

22   distributing quantities of fentanyl in pill form.  So based

23   on surveillance, and several instances of retrieving Mr.

24   Jackson's trash from the ████ Street, St. Albans,

25   apartment, officers obtained a search warrant that was

1    executed on August 29, 2022, at Mr. Jackson's apartment

2    located on ███ Street, in St. Albans, Kanawha County,

3    West Virginia.

4         Inside the apartment, officers found various quantities

5    of powders and various completed pills.  The completed

6    pills, numbering around 10,000, and certainly more than 400

7    grams of fentanyl between the powder and the pills, but the

8    various quantities of pills and powders were sent off to the

9    Drug Enforcement Administration's Mid-Atlantic Laboratory

10   and confirmed to contain fentanyl, again, in excess of 400

11   grams.

12        The apartment also contained various tools and

13   machinery used to press powders into pill form and to stamp

14   the pills with "M30" markings, typically associated with

15   legitimate pharmaceutical manufactured oxycodone pills that

16   are 30 milligrams in weight.

17        Also, as part of the investigation, and prior to the

18   search warrant being executed, the officers became aware

19   that the defendant had placed a package in the United States

20   mail, which actually took place on August 9th, 20 days prior

21   to the search warrant being executed, also in 2022.

22        The package was intercepted with the assistance of

23   postal inspectors.  And a federal search warrant was

24   obtained for the package.

25        The package was searched, and several hundred pills

1    were retrieved from the package also marked "M30." And it

2    was confirmed the defendant had placed that package in the

3    mail.

4              THE COURT:  And the pills consisted of what?

5              MR. WOLFE:  Those pills actually came back with a

6    synthetic opioid, not fentanyl, referred to as

7    Protonitazene, which is another controlled substance.

8              THE COURT:  Thank you.

9    BY THE COURT:

10   **Q.**   And you've heard what Mr. Wolfe stated in his entirety.

11   Did he state it correctly?

12   **A.**   Yes, Your Honor.

13   **Q.**   Thank you.

14             THE COURT:  And, Mr. Moore, does the defendant

15   have anything further with respect to the factual basis for

16   the plea?

17             MR. MOORE:  No, Your Honor.

18   BY THE COURT:

19   **Q.**   I'll ask you then, Mr. Jackson, did you do the acts to

20   which you've pled guilty as more fully set forth in the

21   indictment in this case?

22   **A.**   Yes, Your Honor.

23   **Q.**   At the time you did those acts, did you know and

24   understand and intend what you were doing?

25   **A.**   Yes, Your Honor.

1    **Q.**   Are you pleading guilty then because you are, in fact,

2    guilty of that which is charged in the single-count

3    indictment in this case?

4    **A.**   Yes, Your Honor.

5    **Q.**   Do you understand all the proceedings that have taken

6    place here today?

7    **A.**   Yes, Your Honor.

8    **Q.**   And do you wish to go forward with your plea of guilty?

9    **A.**   Yes, Your Honor.

10   **Q.**   Thank you.  And you may be seated.

11            THE COURT:  The Court finds there is a factual

12   basis for the plea, it is entered freely and voluntarily,

13   and with the full knowledge of the consequences of the plea,

14   including the possible penalty that the Court may in this

15   case impose.

16        The Court accepts and approves the plea agreement, and

17   finds that agreement adequately protects the rights of the

18   defendant, and is in the interests of justice.

19        Accordingly, the Court accepts your plea of guilty,

20   sir, and upon your plea of guilty, it is the judgment of the

21   Court that you're guilty of the charges contained in the

22   indictment in this case, and you stand convicted of one

23   violation of Title 21, United States Code, Section

24   841(a)(1).

25        The Court will direct a presentence investigation by

1    the Probation Department of this Court, and continues your

2    case for sentencing until April 25, 2024, at 1:30 in the

3    afternoon.

4        Is that a satisfactory date and hour for counsel?

5            MR. WOLFE:  Yes, Your Honor.

6            MR. MOORE:  I believe so, Your Honor.

7            THE COURT:  Can you check it out, Mr. Moore?

8            MR. MOORE:  April 25, Your Honor, 1:30?

9            THE COURT:  Yes.  Does that work?

10           MR. MOORE:  Yes, Your Honor.

11           THE COURT:  Very good.

12       And so, with that, I would ask if the parties have

13   anything further?

14           MR. WOLFE:  No, Your Honor.

15           MR. MOORE:  Nothing at this time, Your Honor.

16           THE COURT:  The Court notes the mandatory nature

17   of the statute that directs that the defendant be at this

18   juncture incarcerated.

19       Do the parties wish to address that?

20           MR. WOLFE:  I have nothing to add, Your Honor.

21           THE COURT:  Nothing to add to what?

22           MR. WOLFE:  Your Honor, I understand the Court's

23   concern, given the mandatory minimum penalty.

24       I would note that Mr. Jackson has not had any issues

25   while he's been on bond for some length of time, not only

1    since he's been charged, but since the investigation began.

2        And if the Court believes the defendant needs to be

3    incarcerated at this point, given the penalties, I

4    understand the Court's concern.  However, it's not the

5    United States' -- I did not intend to move for him to be

6    detained at this point, given his performance on bond up to

7    this point.

8            THE COURT:  Under the statute, how does the Court

9    avoid it in this case?

10       The maximum is life, a controlled substance offense.

11   The Court's received the plea of guilty; the defendant

12   stands convicted.

13       How is it under the statute that the Court can release

14   him?

15           MR. WOLFE:  I'm not certain the Court can, Your

16   Honor.  I know the Court has to find exceptional

17   circumstances.  I'm not certain what those would be in this

18   case.

19       I just wanted to note that the defendant has done well

20   on bond, and to the extent that matters.  I also understand

21   the way the statute is constructed, and the fact that I'm

22   not certain there are exceptional circumstances, Your Honor.

23           THE COURT:  Thank you.

24           MR. MOORE:  Your Honor, I understand the way the

25   statute is constructed, as well.  However, in this case,

1    Your Honor, I do think there are exceptional circumstances.

2    And given the fact from the day he was arrested, he has been

3    cooperative, and he's continued to be cooperative, Your

4    Honor.

5         He's been on -- that was prior to even being indicted,

6    Your Honor.  It was at least a year before he was ever

7    indicted.

8         Once indicted, he was placed on bail.  He's been on

9    bail since November.  He's been an exemplary person to have

10   on bail.  He maintains a residence here, Your Honor.  He --

11   there are no factors that would lead one to believe he is a

12   danger to the community nor that he would not appear.

13        In addition, Your Honor, he has additional

14   responsibilities involving a relative, who is handicapped,

15   that he does continue to take care of and has since the

16   beginning of his bond, Your Honor.  And without his

17   presence, Your Honor, that would present a real issue for

18   his family and for that particular individual herself, Your

19   Honor.  She is handicapped.  I don't just mean physically,

20   but in -- mental, mental issues, Your Honor.  And he is the

21   person, and the only person, that has been taking care of

22   her and that continues to take care of her in this case,

23   Your Honor.

24        So I think there are some circumstances, and I think

25   given his prior performance -- pre-indictment performance

 1    and since indictment, Your Honor, I think this is a

 2    situation in which the Court could take an exception, and he

 3    could continue bail at this point, Your Honor.

 4            THE COURT:  The only thing I've heard that comes

 5    close to anything other than ordinary circumstances is

 6    something with respect to a handicapped relative.

 7            MR. MOORE:  Yes.

 8            THE COURT:  But that has not been elaborated upon.

 9    I don't understand the factors that are at play.

10            MR. MOORE:  One second, Your Honor.

11      (An off-the-record discussion was held between defense

12    attorney Moore and the defendant.)

13            MR. MOORE:  Your Honor, to elaborate on the issues

14    of his -- I believe it's his aunt, his great aunt, Gladys.

15    She suffers from cerebral palsy.  See has mental

16    deficiencies.  She physically relies upon him emotionally --

17    well, sorry -- she relies on him physically, as well as

18    emotionally, to take care of her, Your Honor.

19      Without his presence there, she would probably -- well,

20    there is no probably -- she is going to have severe issues

21    dealing with life, in general, Your Honor.

22      I know we are well aware he is going to prison, but if

23    he's released, it would give him an opportunity to put some

24    things in place that would allow her to continue to,

25    hopefully, you know, deal with the situation, and put people

1    in place that would, hopefully, take his place so that she

2    could continue to deal with life, Your Honor.

3        I'm not someone who has ever dealt with somebody in

4    that position personally, but I've seen him hands-on with

5    her, and I've seen the way she responds, Your Honor.  And

6    it's a situation in which she relies upon him, Your Honor.

7    Not just he wants to be there, but she relies upon him, and

8    him alone.  Because the bond has been such that he's been

9    taking care of her for so long, that without him being

10   there, Your Honor, I'm not exactly sure how that situation

11   is going to play out, Your Honor.

12       So I think that, given the situation and the physical

13   and mental disabilities that she has, and the position that

14   he holds in her life, Your Honor, I believe that, given the

15   opportunity, that would satisfy the exceptional

16   circumstances necessary, Your Honor, in this case.

17       That, plus his -- as the government has already spoken

18   to, his performance prior to and since indictment, Your

19   Honor.  I think that we could satisfy the requirements.

20           THE COURT:  Mr. Moore, you referred to the

21   relationship between the two.  What is the relationship?  Is

22   there a blood relationship?

23           MR. MOORE:  Yes.  It's his great aunt, Your Honor,

24   his aunt.

25           THE COURT:  And where does she live?

1          MR. MOORE:  She lives in Dunbar, Your Honor.

2          THE COURT:  In Dunbar?

3          MR. MOORE:  Yes.

4          THE COURT:  And where does he live?

5          THE DEFENDANT:  In South Charleston.

6          MR. MOORE:  In South Charleston.

7          THE COURT:  And is there anyone else living with

8     the aunt?

9          MR. MOORE:  She has a sister, Your Honor, but the

10    day-to-day requirements, he takes care of.  He's there

11    daily.

12         THE COURT:  You are at liberty to add anything

13    that may be helpful to your suggestion.  I would simply

14    invite you to do that now if there is anything further.

15        (An off-the-record discussion was held between defense

16    attorney Moore and the defendant.)

17         MR. MOORE:  Your Honor, I know she lives with

18    another individual, but these are both elderly women, Your

19    Honor.  His aunt is 72, and he has taken care of her,

20    basically, since he was a teenager, even when he was in

21    school and college.  That's what he's done, and that's what

22    he's continued to do, Your Honor.  So it's not a situation

23    where somebody could simply step in and say, hey, I'm going

24    to be here today.

25        This is a situation in which there has been a bond.

1    It's been there almost for life.  She's much older than he

2    is, but he has always taken on that responsibility, Your

3    Honor.  And to do so, to just take him away, without putting

4    somebody or things in a position to help her transition,

5    Your Honor, in my opinion, I think it would probably do her

6    irreparable emotional harm, Your Honor.

7              THE COURT:  Thank you.

8         Do the parties have anything further on the question of

9    release or custody?

10             MR. WOLFE:  No, Your Honor.

11             THE COURT:  There being nothing further, the Court

12   recognizes that the defendant has been compliant while on

13   bond and is likely not a threat or danger to any other

14   member of the community, and is not a threat to flee.

15        The Court does not find exceptional circumstances.

16   Although, the Court will think in those terms to the limited

17   extent of permitting the defendant over the long weekend to

18   make such arrangements as he thinks appropriate for the

19   aunt, and will, as a consequence, be constrained under the

20   statute to require the defendant be taken into custody on

21   Monday, by 2:00 p.m., by which time he's to report to the

22   Marshals Office in this building to be placed in custody

23   until sentencing.

24        And so, the Court will permit the defendant to remain

25   free until that time.

1     But it's up to you voluntarily, Mr. Jackson, to report

2     to the Marshals Office in this building by 2:00 p.m. on

3     Monday, so that you'll have a few days here over the weekend

4     to try to make arrangements to assist in the future care of

5     your aunt.

6     With that, I would simply note that you're remanded to

7     the custody of the United States Marshal as of that hour on

8     Monday.

9     And I would ask if the parties have anything further at

10    this time?

11              MR. WOLFE:  No, Your Honor.

12              MR. MOORE:  Nothing, Your Honor.

13              THE COURT:  We'll stand continued until

14    sentencing.

15    Thank you.

16              THE CLERK:  All rise.

17    (Proceedings concluded at 2:44 p.m.)

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF OFFICIAL REPORTER

 2         I, Catherine Schutte-Stant, Federal Official Realtime

 3    Court Reporter, in and for the United States District Court

 4    for the Southern District of West Virginia, do hereby

 5    certify that, pursuant to Section 753, Title 28, United

 6    States Code, the foregoing is a true and correct transcript

 7    of the stenographically reported proceedings held in the

 8    above-entitled matter and that the transcript page format is

 9    in conformance with the regulations of the Judicial

10    Conference of the United States.

11            s/Catherine Schutte-Stant, RDR, CRR

12    _____    November 25, 2024

13            Catherine Schutte-Stant, RDR, CRR
              Federal Official Court Reporter
14
                        REDACTION CERTIFICATE
15

16    I certify that the foregoing is a true and correct copy of

17    the transcript originally filed with the Clerk of Court on

18    November 27, 2024, and incorporating redactions of personal

19    identifiers requested by the following attorney of record:

20    Jonathan D. Byrne, in accordance with Judicial Conference

21    policy.  Redacted characters/pages appear as a black box in

22    the transcript.  Date:  January 23, 2025.

23              /s/ CATHERINE SCHUTTE-STANT, RDR, CRR

24              _____
                CATHERINE SCHUTTE-STANT, RDR, CRR
                FEDERAL OFFICIAL COURT REPORTER
25
```